UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RONY GEORGE,

        Petitioner,

        v.

WILLIAM BARR, United States Attorney General,

        Respondent.

_____

20-CV-6204

DECISION & ORDER

        The petitioner, Rony George,[1] is a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.  George seeks habeas corpus relief, including an injunction releasing him.  *See* Docket Item 12.  He claims that his continued detention during the COVID-19 pandemic violates his right to substantive Due Process under the Fifth Amendment.  *Id.*[2]  More specifically, George claims that "[t]he unconstitutional conditions in BFDF not only exposed [him] to a severe infection of COVID-19, they have caused needless suffering, hindered his convalescence, and left him vulnerable to long-lasting damage, co-infections, and re-infections."  *Id.* ¶ 3.

---

    [1] It is unclear from the record whether the petitioner's name is "George Rony" or "Rony George."  Because the petitioner's amended petition refers to him as "Rony George," this Court will do the same.

    [2] George also asserts in the third and fourth claims of his amended petition that his continued detention without a bond hearing violates his right to procedural Due Process.  *See* Docket Item 12 at 37.  The Court will address those claims in a separate decision and order.

For example, George claims that when he "has asked for additional Tylenol, he has been denied." *Id.* ¶ 72. "He has been bleeding out of his nose and coughing often, sometimes coughing up phlegm," he says, but he "has never been given cough medicine or even cough drops." *Id.* ¶¶ 49-50. Similarly, he claims that "[h]e has received no . . . anti-diarrheals, and his food has not been modified to mitigate his gastrointestinal symptoms." *Id.* ¶ 72. He also alleges that when he had a fever and "chills and asked for an extra blanket, he [was] denied." *Id.* ¶ 50.

On May 15, 2020, the respondents moved to dismiss the first and second claims in George's petition—both of which relate to the COVID-19 pandemic. Docket Item 13. They first argue that George is not at high risk for complications from COVID-19 under the guidelines issued by the Centers for Disease Control ("CDC") and therefore is not entitled to heightened protection. Docket Item 13-3 at 5-9; *see also Ramsundar v. Wolf*, 2020 WL 1809677, at *3 (W.D.N.Y. Apr. 9, 2020) (finding Due Process violations "stem[ming] from [the respondents'] failing to take the steps recommended by public health officials to protect high-risk individuals [under the CDC's guidelines] from contracting COVID-19"); *Jones v. Wolf*, 2020 WL 1643857, at *1 (W.D.N.Y. Apr. 2, 2020) (same). Even if George were in the high-risk category, the respondents argue, they have not been deliberately indifferent to his serious medical needs. According to the respondents, because George already has contracted COVID-19, the analysis of his claim should center around whether he has received adequate medical care. Docket Item 13-3 at 2. And they say that they have provided "excellent medical care" to George. *Id.*

2

On May 18, 2020, George responded to the motion, arguing that he is in the high-risk category under CDC guidelines.  *See* Docket Item 14 ¶¶ 6-23.  He further argues that the respondents "refused to test him or provide him with care or monitoring for his COVID-19 infection for 17 days, despite his repeated requests.  Afterward, they have not given him medicine, provided him with basic supportive care, or given him medical care as needed and in his language."  *Id.* ¶ 32.  In any event, he contends, deliberate indifference is not required because the conditions of his confinement are no longer "reasonably related to the Government's legitimate goals in ensuring that [he] appear[s] as needed for immigration court or appointments."  *Id.* ¶ 35.

This Court held oral argument on May 21, 2020, and ordered supplemental briefing.  *See* Docket Item 19.  The parties submitted their supplemental papers on May 26, 2020.  *See* Docket Items 20-23.

George submitted a declaration from Nedal Darwish, M.D., stating that George is in the CDC's high-risk category based on several conditions, including hypertension.  Docket Item 21.  George also submitted his own declaration, explaining, among other things, that "[s]ome of [his] Coronavirus symptoms have improved, but [that he] still ha[s] trouble breathing through [his] nose, and [his] head hurts sometimes."  Docket Item 20 ¶ 12.

In their supplemental papers, the respondents advise that even though they do not concede that George falls in the high-risk category, they have moved him "into a cell by himself," and "[t]hus, he has been granted the relief ordered by this Court in *Jones* for vulnerable detainees."  Docket Item 23 at 4.  "[W]ith respect to [George]'s claim of being denied a blanket," the respondents argue, "there is no evidence to support this

3

claim.  Indeed, [George] was seen 11 times by ICE medical personnel and no request for a blanket is noted." *Id.* at 3.  Moreover, they say, "it would be the Government's custom and practice to provide a blanket to [George] if medically necessary." *Id.*

The Court has carefully considered the parties' arguments and the evidence in the record.  For the reasons that follow, the Court grants the respondents' motion to dismiss the first and second claims in George's petition.

## **DISCUSSION**

George first claims that the government violated his Due Process rights by failing to identify him as vulnerable under CDC guidelines and protect him from contracting COVID-19.  But even if George is correct and he is a vulnerable individual, there is no relief that this Court can grant on his habeas petition to remedy such a violation.  George's petition seeks his release.  But releasing him now would not remedy any *prior* Due Process violation that already resulted in his contracting the disease.  Moreover, the respondents now are treating him as a vulnerable individual and giving him the relief to which such an individual is entitled.[3]

The question before the Court is thus whether the treatment that the respondents provided to George—or lack thereof—demonstrates deliberate indifference to his

---

[3] To the extent that George argues that the respondents are not complying with this Court's orders in *Jones* and *Ramsundar*, the Court recently found that the respondents have not violated those orders.  *See* No. 20-CV-361, Docket Item 109.  Moreover, the Court modified its preliminary injunction in those matters to include requirements that the respondents "advis[e] detainees about the importance of, and provid[e] guidance with respect to, wearing masks and maintaining six feet of distance to protect others from asymptomatic transmission" and "conduct biweekly COVID-19 testing of all consenting detainees housed in the vulnerable detainees' units." *Id.* at 7-8.  These new protections will apply to George.

serious medical needs in violation of his right to Due Process.  And on the record before it, the Court finds no such violation.

George's allegation that he was denied an extra blanket when he was experiencing chills is deeply troubling.  As the Court noted at oral argument, such a denial would be inhuman.  But that being said, the Court cannot find on the record before it that George was denied a blanket.[4]  As the respondents observe, there is no record of such a request and no mention of George's having chills in his medical records.  Moreover, George did not file a grievance about the request for a blanket, even though he had filed another medical grievance in the past.  *See* Docket Item 18 at 40 (noting that George "submitted a medical grievance stating his psychiatric medication increases his appetite and [requesting] a snack bag [for] this").  So on the record before the Court, George has not met his burden of proving by a preponderance of the evidence that his request for a blanket was refused.

What is more, even if George was denied a blanket, the remedy to which he would be entitled—at least in the first instance—would not be release; it would be an order precluding any further violation and perhaps damages in a section 1983 action.  See *Jones*, 2020 WL 1643857, at *14 (denying release where the Court was "not convinced that the unconstitutional conditions at BFDF cannot be remedied through an injunction"); *see also* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

---

[4] The Court inquired at oral argument whether an evidentiary hearing was necessary, and both sides stated that it was not.  Therefore, George has asked the Court to decide this motion based on the current record, and the Court does just that.

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."). The respondents are now on notice that such a denial would violate Due Process, and they would be wise to communicate that to the BFDF staff to avoid any such incidents in the future.

The Court is similarly troubled by George's allegations that he was denied Tylenol, cough medication, and diarrhea medication. *See* Docket Item 12 ¶ 72. Once again, though, on this record, the Court does not have sufficient evidence to find that the respondents were deliberately indifferent to George's serious medical needs. More specifically, there is no report anywhere in George's medical records of coughing and diarrhea.[5] Nor is there any record of his requesting additional Tylenol, and, again, he

---

[5] George's medical records indicate that he reported on March 31, 2020, because he was "[a]chy" and "feel[ing] feverish." Docket Item 18 at 48. He was prescribed Tylenol at that visit. *Id.* at 49. On April 12, 2020, he was again seen and requested a COVID-19 test. *Id.* at 44. During that visit, he reported that he was not currently in pain, he had a normal temperature, and there is no indication that he was coughing or experiencing diarrhea. *See id.* at 44-45. On April 16, 2020, he was tested for COVID. *Id.* at 41. He was seen again on April 18, April 19, April 21, April 23, April 24, April 29, April 30, and May 6, and at each of those visits, he reported that he had not had any of the following symptoms in the past 24 hours: "fever, felt feverish, chills, cough, and/or difficulty breathing." *Id.* at 6, 11, 15, 22, 26, 30, 35, and 38. He also was seen on April 20, and the nurse noted that his lungs were "normal, clear to auscultation bilaterally, [with] no wheezes, rales, [or] rhonchi." *Id.* at 33-34. He did not report diarrhea at any of those visits. *See id.* at 6, 11, 15, 22, 26, 30, 33-35, and 38.

[6] George also alleges that he has been "unable to communicate with the nurse in Spanish"—his native language. Docket Item 12 ¶ 67. But his medical records repeatedly state that he "speaks English fluently." *See, e.g.*, Docket Item 18 at 41, 44, and 48.

6

did not file a medical grievance.  *See* Docket Item 18.[6]  Therefore, George has not met his burden of proof on these allegations as well.

Moreover, as the respondents observe, George "has been seen by a medical professional in excess of ten times, which is likely more than anyone in the general population [who is not hospitalized] has been seen."  Docket Item 13-3 at 11.  George notes that he sometimes was unable to see a medical professional because "a nurse comes by once a day in the morning," and "[w]hen the nurse has come by while [George] is sleeping, he has been unable to see any provider or to report new symptoms until the next day."  Docket Item 12 ¶ 48.  But George has not shown that a system of once-daily checks constitutes deliberate indifference to his serious medical needs.  Nor has he shown that he will suffer any permanent consequences due to this alleged lack of care.

To the contrary, as the respondents' expert observes, "[a]t no time did [George] have a fever and his oxygen saturation was never lower than 97%, primarily staying at 99-100%."  Docket Item 13-2 ¶ 9.  Moreover, George "was seen for follow up by his nurse practitioner on May 6, 2020," at which time "he did not have a fever and his only symptom was nasal congestion."  *Id.* ¶ 11.  Finally, George concedes that "[s]ome of [his] Coronavirus symptoms have improved" and that his only remaining symptoms are "trouble breathing through [his] nose" and occasional headaches.  Docket Item 20 ¶ 12.

---

[6] George also alleges that he has been "unable to communicate with the nurse in Spanish"—his native language.  Docket Item 12 ¶ 67.  But his medical records repeatedly state that he "speaks English fluently."  *See, e.g.*, Docket Item 18 at 41, 44, and 48.

Thus, the Court finds that the medical care the respondents have provided to George does not violate his right to Due Process.[7]

**ORDER**

For all those reasons, the respondents' motion to dismiss, Docket Item 13, is GRANTED, and the first and second claims in George's petition, Docket Item 1, are DISMISSED.

SO ORDERED.

Dated:	June 10, 2020
	Buffalo, New York

	/s/ Lawrence J. Vilardo
	LAWRENCE J. VILARDO
	UNITED STATES DISTRICT JUDGE

---

[7] George offers no authority for his argument that a showing of deliberate indifference is not required to prevail on his claim for denial of medical treatment.  He cites *Bell v. Wolfish*, 441 U.S. 520 (1979), which held that "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 539.  Here, however, there is no "restriction or condition" that the respondents placed upon George; the cause of his allegedly constitutionally-deficient conditions of confinement is the COVID-19 pandemic.  Thus, the relevant question is whether the respondents' response to the pandemic—or lack thereof—demonstrates deliberate indifference and therefore violates Due Process.  As explained above, this Court finds that it does not.